### DALLAS RY. CO. v. HALLUM et al. *
#### (No. 9409.)

(Court of Civil Appeals of Texas. Dallas. July 3, 1925. Rehearing Denied Oct. 24, 1925.)

**1. Appeal and error ☞989—In weighing sufficiency of evidence to support verdict, that sustaining it alone will be considered.**

In weighing sufficiency of evidence to support verdict, that sustaining it alone will be considered.

**2. Carriers ☞318(10)—Evidence held to sustain finding of negligence in starting street car before passenger had had time to alight.**

Evidence *held* to sustain finding of negligence in starting street car before passenger had had time to alight.

**3. Damages ☞132(7)—$12,000 for injuries to back, hip, and leg of 32 year old woman held not excessive.**

Twelve thousand dollars damages for injuries to back, hip, and leg of 32 year old woman who, in addition to housework, did sewing for public, earning $3 to $8 a week, *held* not excessive.

**4. Appeal and error ☞932(1)—In weighing its sufficiency to support award, evidence considered most favorably to party recovering damages.**

In weighing sufficiency of evidence to sustain award of damages, it must be viewed most favorably to party recovering damages.

**5. Trial ☞251(1)—Instructions must conform to and be supported by pleadings.**

Instructions must conform to and be supported by pleadings.

**6. Trial ☞352(4)—Issues of negligence submitted must be confined to those pleaded and supported by testimony.**

Issues of negligence submitted must be confined to those pleaded and supported by testimony.

**7. Damages ☞208(4)—Evidence held to warrant submission of issue as to amount of lost earnings.**

Evidence that plaintiff suing for personal injuries before marriage was a seamstress, and after marriage continued to sew for public, earning $3 to $8 a week, and that injuries complained of had prevented her from continuing such work, *held* to warrant submission of issue as to amount of her lost earnings.

**8. Carriers ☞321(19)—Instruction defining "proximate cause" held not objectionable.**

Instruction that "proximate cause" was one which by unbroken and continuous sequence produced a result, or from which such result might reasonably have been foreseen or anticipated "by a very careful, cautious, and prudent person," *held* not objectionable for use of quoted language.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate cause.]

**9. New trial ☞52—Evidence held not to show jury had arrived at quotient verdict, warranting new trial.**

That jurors, in effort to agree on amount of damages, each wrote on slip of paper amount which he desired to allow, which amounts were added and sum divided by 12, which resulted in a quotient of $2,000 less than verdict arrived at, *held* not to show misconduct warranting new trial.

**10. New trial ☞44(3)—New trial on ground that jury had considered extraneous matters in arriving at amount of award for personal injuries held unwarranted.**

That one juror, during consideration of amount of damages to be awarded for personal injuries, commented on fact that plaintiff's attorneys would like to get one-third of amount of recovery *held* not to justify new trial on ground that jury had discussed it and were probably influenced by extraneous matters.

**11. New trial ☞44(3)—That jury requested statements of persons not produced as witnesses held not to show it had considered against defendant failure to produce such witnesses.**

That jury, during deliberations in action for personal injuries, inquired of judge if it might obtain statements of two persons who, according to testimony, were apparently eyewitnesses of accident, but who were not produced by defendant, who had their names, *held* not to warrant new trial on ground that jury had considered against defendant's failure to produce such witnesses.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused January 6, 1926.

Error from District Court, Dallas County; T. A. Work, Judge.

Action by Mrs. Frances Hallum and another against the Dallas Railway Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for plaintiff in error.

Carden, Starling, Carden & Hemphill, and Wallace & Taylor, all of Dallas, for defendants in error.

LOONEY, J. The Dallas Railway Company appeals by writ of error from a judgment for $12,000 rendered against it in favor of Mrs. Frances Hallum for personal injuries received by her while alighting from one of the company's street cars in the city of Dallas.

The case was submitted to a jury on special issue, and, on their findings, the judgment was rendered. The court's conclusions of fact and law will be stated during the progress of the discussion.

1. Plaintiff in error, in its eighth proposition, contends that the verdict of the jury on the issue of negligence is so against the overwhelming preponderance and weight of the evidence as to indicate improper motives on the part of the jury.

Plaintiff stated her cause of action substantially as follows: That she was a passenger, riding in one of the company's cars, and, while it was at a standstill at a street intersection, she undertook to alight through the exit door at the front end, and before she completed her exit, and before she had a reasonable length of time to do so, the company, and its agent and servant, the motorman of said car, caused the same to start, and that by reason thereof plaintiff was thrown with great violence from the car to the pavement of the street, and injured.

She further alleged that the defendant and its agents and servants were guilty of negligence in the following respects, to wit: (a) That they negligently and carelessly started the car in motion while she was in the act of alighting from same; (b) that they negligently and carelessly started the car with a lurch and a jerk; (c) that they negligently and carelessly failed to allow plaintiff a reasonably sufficient length of time in which to alight from the car; (d) that they negligently and carelessly started the car in motion without warning plaintiff of their intention so to do; (e) that they negligently and carelessly operated and moved the car in such a manner as to cause plaintiff to be thrown with great force and violence to the pavement of said street.

· The testimony of Mrs. Hallum fully sustained her allegations, and, further, she is corroborated by the circumstance of the seriousness and apparent permanency of her injuries. It is probable, and entirely reasonable, that a person of her weight (168 lbs.), thrown from the steps of a street car, striking the pavement on her right knee, would suffer serious injuries to her knee, hip, and spine, as testified to by her, whereas a fall on the level, caused by her heel slipping, as contended by the defendant, would not likely produce such serious consequences.

Defendant below combatted this theory, contending that Mrs. Hallum was not thrown from the steps of the car, but that, after being entirely clear of the car, in walking from the car to the curb, her heel slipped, she fell, and was in this manner injured. Defendant introduced three witnesses whose testimony supported its theory, which, if believed by the jury, would have resulted in a verdict in its favor.

[1] The question presented to the jury was one of fact on conflicting evidence, a matter peculiarly within their province to settle, which they did, in favor of the plaintiff. Our duty in the premises is plain. The rule that must govern us is that the evidence favorable to the contentions of plaintiff in error will be rejected, and the evidence sustaining the verdict of the jury will alone be considered by the court.

[2] As the evidence, in our opinion, fully justified the verdict of the jury on the issue of liability, we would not be warranted in disturbing the judgment on the ground urged in this assignment, and it is therefore overruled. Wick v. McLennan (Tex. Civ. App.) 186 S. W. 847; Ft. Worth & D. C. Ry. Co. v. Decatur, etc., Co. (Tex. Civ. App.) 193 S. W. 392.

[3] 2. It is contended in the fourth proposition that the verdict in favor of the plaintiff for $12,000 is excessive, and resulted from improper motives on the part of the jury.

With reference to this issue the facts are: That at the time of receiving the injuries complained of Mrs. Hallum was strong and healthy, 32 years of age, weighing 168 pounds, and had never suffered any irregularity in her menstrual periods. She was able to do all of her household work, including cleaning, washing, ironing, except the flat work; was a seamstress; did all of her sewing; made her husband's shirts; and, besides this, earned from sewing for the public from $3 to $8 per week. On account of the injuries she was confined in bed about 6 weeks, suffered intense pain, and thereafter, for 3 or 4 months, was compelled to use crutches in walking, and at the end of 2 years was still crippled and compelled to use a walking stick for support. At the expiration of something like 2 years the condition of her knee had improved, but was not normal, her right limb being enlarged in the vicinity of the knee, and her hip was in worse condition than at first and apparently will be permanently injured. Her rest at night was so disturbed that frequently, on account

of pains in her hip, lower part of the spine, and at times reaching to her head, in order to induce sleep and rest, was compelled to apply a hot water bottle to her limb. Since receiving the injuries her menstruation has been irregular; the periods missing from 15 days to a month. She could not do all her work; was compelled to hire her sewing, washing, and ironing done; and was unable to sew for the public and earn money from that source. Other serious consequences of a delicate nature resulting from the injuries were shown to exist, indicating clearly the painful and probably permanent injured condition of her hip and spine.

Without attempting an analysis of the evidence, will simply state that, in our opinion, the verdict was authorized; that it is not excessive; and was not the result of improper motives on the part of the jury.

[4] The rule that guides us to a correct solution of this matter was tersely stated by Judge Brady in Tex. Elec. Ry. Co. v. Whitmore (Tex. Civ. App.) 222 S. W. 644, in the following language:

"It is now settled law in this state that a verdict will not be disturbed upon appeal, unless it is manifestly excessive; and in deference to the verdict the appellate court is required to take the evidence in the view most favorable to the party recovering the damages."

The proposition just considered is overruled.

3. Plaintiff in error contends in its sixth proposition that the court erred in submitting to the jury the issue as to the negligence of both the conductor and motorman, or either of them, when, as contended by plaintiff in error, the specific allegations of the petition were confined to charges of negligence against the motorman only, and, further, that there was no evidence of any negligence on the part of the conductor.

In the second paragraph of this opinion we have given the substance of plaintiff's allegations, which clearly charge that the agents and servants (the motorman and conductor) of the defendant in control of the street car on the occasion in question were guilty of negligence in the respects specifically set out.

The charge of the court called in question is as follows:

Special issue No. 2:

"Do you find and believe from a preponderance of the evidence that the defendant, through either or both of its employés, was negligent while Mrs. Hallum was alighting from such car on such occasion?"

Special issue No. 3 was as follows:

"Do you find and believe from a preponderance of the evidence that the negligence, if any, of the defendant, through either or both of its employés upon such occasion, proximately caused plaintiff Mrs. Hallum to be injured?"

Without reproducing the evidence in detail, we state it as our conclusion, from a

careful examination, that it sustained these allegations, and showed that the motorman and conductor acted together in operating the car; that the acts of starting and stopping were performed by the motorman, but were largely controlled upon signals given by the conductor.

[5, 6] Plaintiff in error cites a number of authorities to the effect that a charge must conform to and be supported by the pleadings, and that the issues of negligence submitted should at all times be confined to those both pleaded and supported by the testimony.

The rule of law contended for by plaintiff in error is correct, but, in our opinion, was in no respect violated by the trial court in the instant case. We therefore overrule this contention.

[7] 4. In its seventh proposition plaintiff in error insists that the question of compensation for the diminished capacity of Mrs. Hallum to work for others for pay in the past and in the future should not have been submitted to the jury, in the absence of testimony as to the amount of money she would have been able to earn in the future.

That part of the court's charge called in question is a part of special issue No. 5, reading as follows:

"What sum, if paid now, will reasonably compensate the plaintiff for * * * her diminished capacity * * * to do work for others for pay, if any, in the past, if there has been any in the past, and in the future, if you find there will be any in the future, which you find have been directly and proximately caused by the negligence, if any, of the defendant?"

The specific contention of plaintiff in error is that the evidence raises no issue as to any amount Mrs. Hallum would have been able to earn in the future.

We cannot accept the view of plaintiff in error. The submission of this issue was authorized by the evidence to the effect that Mrs. Hallum was a seamstress, and that, prior to her marriage, which occurred within 2 years before she was injured, was in the service of a manufacturing company in Dallas, making ladies ready to wear clothes; that, after her marriage, in addition to her household and domestic activities, she took in sewing from the public, from which she earned from $3 to $8 per week. On account of the injuries she has been unable to take sewing from the public, and consequently has been deprived of these earnings.

The correctness of the charge in question is, in our opinion, fully vindicated by the doctrine announced in the following cases: Electric St. Ry. Co. v. Motwiler, 101 Tex. 521, 109 S. W. 921; St. L. & S. W. Ry. Co. v. Niblack, 53 Tex. Civ. App. 619, 117 S. W. 191; Cohn v. Saenz (Tex. Civ. App.) 211 S. W. 497; Hamilton v. Harris (Tex. Civ. App.) 223 S. W. 539.

The seventh proposition is therefore overruled.

[8] 5. In its ninth proposition plaintiff in error calls in question the correctness of the court's definition of "proximate cause." The charge of the court objected to reads as follows:

"By the term 'proximate cause' as used in this charge is meant such a cause as in an unbroken and continuous sequence, without the intervention of any new or independent cause, produces a result, and without which the result would not occur, and from which such result or some like result might reasonably have been foreseen or anticipated by a very careful, cautious and prudent person."

The specific objection to this charge is that it was complete without the addition of the words "by a very careful, cautious and prudent person," and that the defendant was not required under all circumstances to anticipate what a very careful, cautious, and prudent person would anticipate.

The charge in question is not, in our opinion, objectionable. The law imposes on carriers a very high degree of care for the safety of their passengers. It would be a clear violation of this duty if, while a passenger is in the act of alighting from a street car, the motorman or conductor, or both, acting conjointly, should put in motion the car from which the passenger was alighting. The company would be guilty of negligence, if, by the exercise of the degree of care imposed by law, its employés might have known that the passenger was in the act of alighting. The motorman and conductor of the car in question, who were required to anticipate and foresee the usual and ordinary results that would likely follow the act of starting the car in motion while Mrs. Hallum was upon the steps and in the act of alighting, were the same agents and representatives of the company, whose duty it was to exercise a high degree of care for her safety. 3 Thompson on Negligence, § 3520; 22 R. C. L. p. 124; Ft. W. & D. C. Ry. Co. v. Kidwell, 112 Tex. 89, 245 S. W. 667.

[9] 6. The contention is made by proposition No. 2 that the verdict of the jury should have been set aside and a new trial awarded, for the reason that the jurymen, in their efforts to agree on the amount of damages to be awarded, arranged that each member of the jury should write on a slip of paper the amount he desired to allow as damages; that these amounts should be added, and the sum divided by 12, and the fact that after this was done no member of the jury suggested an amount lower than the quotient obtained raised a reasonable doubt as to the probable effect of such conduct in producing the verdict finally agreed on.

This alleged misconduct of the jury was raised by plaintiff in error in its motion for a new trial. It was shown on the hearing of the motion that, while the jury was considering the amount of damages they would allow, various amounts were suggested, ranging from $1,500 to $20,000; that the suggestion was made by some member that the amount that each favored should be added up and the sum divided by 12, which was done, the quotient produced being about $10,000.

There was no agreement by the jurors in advance that the quotient should be their verdict, nor was it, after being obtained, adopted—on the contrary, was expressly rejected. It is clear from the evidence that the procedure was adopted as a "feeler" to develop the views of the different members of the jury, and to obtain a working basis. It did not, in our opinion, constitute misconduct on the part of the jury. If the jurors, entertaining, as they did, varying views as to the amount of damages plaintiff was entitled to receive, were to reach a common understanding, they must do so as the result of a free, candid discussion. If each had obstinately adhered to his position, a mistrial would have inevitably resulted. Therefore they should, as reasonable men, have adopted some sensible plan by which their differences could be composed and an agreement reached.

The verdict was not arrived at by lot. The purpose of obtaining the quotient, to phrase it in the language of one of the jurors, "was done just in order to get a basis to work upon."

It has been repeatedly held by our courts, as said in El Paso Elec. Ry. Co. v. Lee (Tex. Civ. App.) 223 S. W. 497—

"that when there was no agreement beforehand to adopt the quotient as the verdict, and the quotient was to be used, and was used, merely as a working basis to arrive at the amount of the verdict, no reversible error is shown." (Handley v. Leigh, 8 Tex. 129; M. K. & T. v. Hawkins, 50 Tex. Civ. App. 128, 109 S. W. 221, 224); Andrews v. York (Tex. Civ. App.) 192 S. W. 338; Traction Co. v. Evans (Tex. Civ. App.) 152 S. W. 707; Weatherford, M. W. & N. R. Co. v. Thomas (Tex. Civ. App.) 175 S. W. 822.

[10] 7. It is further insisted by proposition No. 1 that the verdict and judgment should have been set aside and a new trial granted on account of the misconduct of the jury, in this, that, after retiring, they discussed extraneous matters that probably influenced them in a manner prejudicial to plaintiff in error, in that, before the amount of the damages was agreed upon, it was stated by some member of the jury that the plaintiff would have to pay attorney's fees out of the recovery, and that such fees were usually one-third of the amount of the recovery.

This matter was set up as one of the grounds for a new trial, and, on the hearing, one juror testified that the question as to whether Mrs. Hallum would have to pay out a portion of her recovery for attorney's fees was discussed in the jury room; that somebody suggested she would have to pay an attorney, and that it was usual to give one-

third. This discussion took place before the verdict for $12,000 was agreed upon. Only one other juror was questioned in regard to this matter, and he knew nothing about it. The juror who testified to the fact denied that it influenced him or that he gave any consideration to the suggestion in agreeing on the verdict.

We fail to find any merit in this contention. The reference made to the fact that plaintiff would have to pay her attorneys one-third of the recovery seems to have been simply the expression of an opinion by the juror, and it is not shown that it influenced any one.

In the case of Houston & T. C. R. Co. v. Gray (Tex. Civ. App.) 137 S. W. 731, on motion for a new trial filed under article 2021 of the Revised Statutes, it was shown that a statement was made in the jury room, while the jurors were considering the amount of their verdict, that the plaintiff ought to have a verdict for $50,000 because the lawyers would get half. In this case a verdict for $30,000 was agreed on. Judge Jenkins, in reviewing the matter, said:

"We do not think there is any merit in the contention as to the alleged misconduct of the juror Bishop. It appears that he was for $50,000 damages upon the ground that appellee's attorneys would get one-half of what was recovered. This must be regarded merely as an expression of opinion on his part, and not as a statement of a fact purporting to be within his knowledge."

This case reached the Supreme Court on writ of error, and, in an opinion by Chief Justice Brown, the conduct of the juror was condemned, but the judgments of the trial court and the Court of Civil Appeals were upheld. Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606.

In construing the statute brought under review (Rev. St. art. 2021) Judge Brown announced the following rule:

"If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside; but the judge who tried the case seems to have acted promptly and fairly in the investigation and we know that he could form safer conclusions from examining the jurors than this court can from the record. There is much in looking at the man who testifies."

Also see I. & G. N. Ry. Co. v. Smith (Tex. Civ. App.) 269 S. W. 886.

We do not believe the reference to attorney's fees had any effect whatever in influencing the amount of the verdict, and that the trial court did not abuse its discretion in overruling the motion for a new trial on this ground.

[11] 8. Plaintiff in error makes the further contention by proposition No. 3 that the verdict and judgment should have been set aside and a new trial awarded on account of the misconduct of the jury in this, that, after retiring, they considered as a circumstance against plaintiff in error, and as a presumption of negligence, the fact that two men who witnessed the transaction and carried Mrs. Hallum home from the place of the accident were not produced as witnesses.

This ground was also set up in the motion for a new trial. It was shown on the trial of the cause that at the time Mrs. Hallum claims she was thrown from the street car, and before she was picked up, two men, strangers to her, made their appearance, assisted her up, and, at the request of the conductor of the car, took her in their automobile to her home. The evidence justifies the belief that Mrs. Hallum, while alighting from the car, and at the time she fell, was under the observation, or could have been seen, by these two men; in other words, that they were eyewitnesses to the accident, and could have given evidence on the vital issue of liability, that is, as to whether Mrs. Hallum was thrown from the car step, as testified to by her, or whether she alighted safely and afterwards fell in the street, as the evidence introduced by plaintiff in error tended to show.

The evidence on the trial further showed that the conductor took the cards and names of these men and turned the data into the office of the railway company. Neither of these men was called as a witness by the plaintiff in error, nor did it make any attempt to account for their absence.

On hearing the motion for a new trial it was proven that some member of the jury stated that possibly the testimony of these men was not favorable to the railway company, and it was suggested by a member that they obtain their statements. Thereupon the foreman sent a written communication to the court to ascertain whether or not the jury would be permitted to obtain their statement, to which the court promptly answered, "No." This closed the incident, and thereafter there was no discussion in regard to the men or their testimony. It was not shown that any one was influenced by the remark of the juror to the effect that possibly the evidence of these men was not favorable to the company.

As the evidence on the trial revealed the fact that these men were present, witnessed the transaction and took Mrs. Hallum home, it was natural that the jurors would be eager to hear their testimony. The fact that they made the request for the statements disproves the suggestion that they were inclined to speculate as to what the testimony of the men might be. The denial by the court of the request was in effect an instruction that the matter was not for their consideration, and evidently the jury so understood it, for it is not contradicted that, after the court denied the request, nothing further was said by them, the matter was dropped.

The question for us is, Did the trial court abuse the discretion lodged with it in deny-

ing a new trial on the ground presented? In our opinion it did not. Chief Justice Rainey, for this court, in construing article 2021 of the Revised Statutes, in M. K. & T. Ry. Co. v. Blalack (Tex. Civ. App.) 128 S. W. 706, said:

"The statute authorizes a new trial for misconduct of the jury, if, upon examination in open court, the trial judge, in his discretion, is of the opinion it should be granted. This law subverts the doctrine of long standing that the affidavit of a juror would not be heard to impeach his verdict, but the lawmakers were wise enough to leave it to the discretion of the trial judge in granting a new trial. The trial judge in his discretion found that the conduct of the jury in the manner stated did not affect the verdict of the jury. The evidence, we think, supports this finding, and we are not disposed to interfere with the court's ruling."

To the same effect see Fox v. H. & T. C. Ry. Co. (Tex. Civ. App.) 186 S. W. 858; Gulf States Tel. Co. v. Evetts, (Tex. Civ. App.) 188 S. W. 289; M., K. & T. Ry. Co. v. Lumber Co. (Tex. Civ. App.) 206 S. W. 823; Debes v. Greenstone (Tex. Civ. App.) 260 S. W. 213; Green v. Enen (Tex. Civ. App.) 270 S. W. 929.

We have carefully considered all assignments and propositions urged by plaintiff in error, and, finding no reversible error, the same are overruled, and the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

In plaintiff in error's motion for rehearing, among other things, it is insisted that the court erred in its conclusion that the evidence justified the belief that, when Mrs. Hallum alighted from the car, and fell, she was under the observation or could have been seen by the two men whose statement the jury requested. We have given the record a very careful re-examination, but fail to find any reason to change the meaning and import of the comment made in the original opinion in regard to this point.

Mrs. Hallum, in describing the circumstances of receiving the injuries complained of, said:

"All of a sudden the motorman started the car, and threw me to the street, and the next thing I knew I was lying on the sidewalk, and two men were standing over me. * * *. I do not know who these other two men were. * * * I know that I was hurt, and these men picked me up out of the street and laid me on the sidewalk. * * * These two men that

276 S.W.—30

picked me up and laid me over there on the sidewalk picked me up and put me in a car and took me home. * * * I do not know whether at the time that I started to get off the street car before the accident the automobile with the two gentlemen that carried me home was in sight or not. I did not see the automobile."

I. E. Bartlett, a passenger on the street car at the time and an eyewitness, said:

"When the car had stopped and the lady had fallen it seems to me, now, from the best of my recollection, that there was an automobile that run up pretty close to her. * * * There was an automobile there, and it had stopped for the car to stop, and, of course, when it started the automobile started. The car and the automobile were both heading east. The automobile stopped for the car, and it must have been behind the car, because it pulled up right even with the street car; I suppose that the automobile had tried to pass the car. I could not say whether the automobile hit the lady or not, but they were right close together. When the street car stopped I think that the automobile was just a little in behind the street car. I do not know where the automobile was when the car stopped the first time. The first that I noticed of the automobile it had stopped. It could not have been but a second or two after the lady fell until the automobile drove up there. You might say I saw the lady and the automobile at the same time, right together, or about the same time. I think that the way she fell she would be right in front of any automobile that happened to be on that side of the street. Just as she fell the automobile was there and the lady was there."

From this testimony, and other relevant circumstances, we concluded, as stated in the original opinion, that—

"The evidence justifies the belief that Mrs. Hallum, while alighting from the car and at the time she fell, was under the observation or could have been seen by these two men; in other words, that they were eyewitnesses to the accident, and could have given evidence on the vital issue of liability, that is, as to whether Mrs. Hallum was thrown from the car step as testified to by her, or whether she alighted safely and afterwards fell in the street, as the evidence introduced by plaintiff in error tended to show."

After carefully examining and considering plaintiff in error's motion for rehearing, we fail to find any reason why the judgment heretofore rendered should be set aside; therefore the same is hereby in all things overruled.

Overruled.